United States Courts
Southern District of Texas
FILED

AUG 29 2018

David J. Bradley, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § § | Criminal No. 18 CR 513 |
| DR. OSCAR LIGHTNER, and ANDRES MARTINEZ, JR. | § § § § § | UNDER SEAL |
| Defendants. | § | |

# INDICTMENT

The United States Attorney for the Southern District of Texas charges:

## General Allegations

At all times material to this Indictment, unless otherwise specified:

1. The Controlled Substances Act (CSA) governed the manufacture, distribution, and dispensing of controlled substances in the United States. With limited exceptions for medical professionals, the CSA made it "unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense . . . a controlled substance" or conspire to do so.

2. The CSA and its implementing regulations set forth which drugs and other substances are defined by law as "controlled substances," and assigned those controlled substances to one of five schedules (Schedule I, II, III, IV, or V) depending on their potential for abuse, likelihood of physical or psychological dependency, accepted medical use, and accepted safety for use under medical supervision.

3. "Schedule II" means that the drug has a high potential for abuse, the drug has a currently accepted medical use in treatment in the United States or a currently accepted medical

use with severe restrictions, and abuse of the drug may lead to severe psychological or physical dependence. 21 U.S.C. § 812(b)(2).

4. Pursuant to the CSA and its implementing regulations: Hydrocodone was classified as a Schedule II controlled substance. 21 C.F.R. § 1308.12(b). Hydrocodone is found in medications known by the brand names Vicodin, Norco, and Lortab. Carisoprodol was classified as a Schedule IV controlled substance. 21 C.F.R. § 1308.14(c). Carisoprodol, sometimes prescribed under the brand name Soma, was a purported muscle relaxant.

5. Medical practitioners, such as physicians, who are authorized to prescribe controlled substances by the jurisdiction in which they are licensed to practice medicine are authorized under the CSA to prescribe, or otherwise distribute, controlled substances, if they are registered with the Attorney General of the United States. 21 U.S.C. § 822(b); 21 C.F.R. § 1306.03. A prescription for a controlled substance may only be dispensed, or filled, "by a pharmacist, acting in the usual course of his professional practice, and either registered individually or employed in a registered pharmacy . . . ." 21 C.F.R. § 1306.06. Upon application by the practitioner, the Drug Enforcement Administration (DEA) assigns a unique registration number to each qualifying physician, pharmacist, or pharmacy.

6. Under Chapter 21 of the Code of Federal Regulations, Section 1306.04(a), a prescription for a controlled substance "must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fills the prescription.

An order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research [is] not a prescription within the meaning and intent of [the CSA] and the person knowingly filling such a purported prescription, as well as the person issuing it, [is] subject to the penalties provided for violations of the provisions of law relating to controlled substances."

7. All prescriptions for controlled substances "shall be dated as of, and signed on, the day when issued and shall bear the full name and address of the patient, the drug name, strength, dosage form, quantity prescribed, directions for use, and the name address and registration number of the practitioner." 21 C.F.R. § 1306.05(a). "The refilling of a prescription for a controlled substance listed in Schedule II is prohibited." 21 C.F.R. § 1306.12(a); 21 U.S.C. § 829(a).

8. A pain management clinic may not operate in Texas without obtaining a certificate from the Texas Medical Board. The Texas Medical Board defines a pain management clinic as a publicly or privately owned facility for which a majority of patients are issued, on a monthly basis, a prescription for opioids, benzodiazepines, barbiturates, or carisoprodol, but not including suboxone. A person was exempt from the certification requirement if the clinic was owned or operated by a physician who treats patients within the physician's area of specialty and who personally uses other forms of treatment, including surgery, with the issuance of a prescription for the majority of the patients.

9. Illegitimate pain-management clinics often obtain their patients through what are often called "runners," "crew leaders," or "facilitators" (hereinafter referred to as "runners") Runners many times recruit patients to visit illegitimate pain-management clinics in order to obtain

prescriptions for oxycodone, hydrocodone, carisoprodol, alprazolam, xanax, and other controlled substance prescriptions to sell on the illegal drug market. Runners often recruit illegitimate patients, who are often homeless, by paying them cash and/or by offering them free lunches and other benefits.

### Clinic

10. Jomori Institute Incorporated, dba Jomori Health and Wellness (JOMORI), is a medical clinic purporting to provide pain management. JOMORI is located in Houston, Texas in the Southern District of Texas, and was not certified with the Texas Medical Board as a pain management clinic.

### Defendants

11. Defendant **DR. OSCAR LIGHTNER** is a doctor of medicine, licensed by the State of Texas, and the President, Director of JOMORI. **DR. OSCAR LIGHTNER** formed JOMORI on or about July 19, 2012. **DR. OSCAR LIGHTNER** maintains a Drug Enforcement Administration Registration Number. LIGHTNER issued prescriptions for controlled substances at JOMORI outside the usual scope of professional practice and without a legitimate medical purpose in exchange for U.S. currency.

12. Defendant **ANDRES MARTINEZ, JR.** was the manager and operator of JOMORI and is not a medical professional. **ANDRES MARTINEZ, JR** oversaw the recruiting of illegitimate patients to JOMORI so that **DR. OSCAR LIGHTNER** could prescribe hydrocodone, carisoprodol, and other controlled substances in exchange for U.S. currency.

## COUNT 1
### Conspiracy to Distribute and Dispense Controlled Substances
### (21 U.S.C. § 846)

13.     Paragraphs 1 through 12 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

14.     From in or around March of 2016, through in or around August 2018, in the Houston Division of the Southern District of Texas, and elsewhere, the defendants,

**DR. OSCAR LIGHTNER and ANDRES MARTINEZ, JR.**

did knowingly and intentionally combine, conspire, confederate, and agree with each other and with others known and unknown to the grand jury, to violate Title 21, United States Code, Section 841(a)(1), that is, to unlawfully distribute and dispense, mixtures and substances containing a detectable amount of Schedule II controlled substances, including hydrocodone, not for a legitimate medical purpose and outside the scope of professional practice.

All in violation of Title 21, United States Code, Sections 846.

### Purpose of the Drug Conspiracy

15.     It was the purpose and object of the conspiracy for Defendants to unlawfully enrich themselves by, among other things: (a) prescribing controlled substances without a legitimate medical purpose and outside the scope of professional practice; (b) generating large profits from those prescriptions; and (c) diverting the proceeds from those controlled substance prescriptions for the personal use and benefit of Defendants and their coconspirators known and unknown to the Grand Jury.

## Manner and Means of the Conspiracy

The manner and means by which the defendants sought to accomplish the purpose and object of the conspiracy included, among other things:

16. **DR. OSCAR LIGHTNER** would and did use his status as a licensed physician, his DEA Registration Number, and his medical practice JOMORI, to knowingly prescribe hydrocodone, a Schedule II controlled substance, and carisoprodol, a Schedule IV controlled substance, outside the course of professional practice and not for a legitimate medical purpose.

17. **DR. OSCAR LIGHTNER** was required under Texas law to register JOMORI as a pain management clinic with the Texas Medical Board, but did not.

18. **DR. OSCAR LIGHTNER** and **ANDRES MARTINEZ,** hired security guards to work at JOMORI.

19. **DR. OSCAR LIGHTNER** would often prescribe to his patients among other drugs, hydrocodone, a highly addictive and often-abused opioid, and carisoprodol, well-known drug of abuse and purported but unproven muscle relaxer that, when taken with an opioid, enhances the patient's "high" from the opioid. Taken together, hydrocodone and carisprodol constitute a dangerous drug combination, and increase the risk of death or overdose to the consumer. The prescription of this combination falls below the standard of care for a physician, and is outside the course of professional practice.

20. **ANDRES MARTINEZ, JR.** would recruit patients from runners and others to visit JOMORI. **ANDRES MARTINEZ, JR.**, and other coconspirators known and unknown to the grand jury, would accept cash from runners, in exchange for prescriptions from **DR. OSCAR LIGHTNER** for hydrocodone, carisoprodol, and other drugs, purportedly ordered for the runners' patients, outside the course of professional practice and not for a legitimate medical purpose.

21. The runners would often bring their illegitimate patients in groups to JOMORI. Often the runners, not the patients, would pay **ANDRES MARTINEZ, JR.** or others known and unknown to the grand jury, for purported doctor visits at JOMORI. The runners would often transport the patients to local pharmacies to fill the prescriptions. After the drugs were received by the patient or the runner, the runners would most often sell the drugs on the illegal drug market.

22. **ANDRES MARTINEZ, JR.** would often accept money from runners to move the runners' illegitimate patients to the front of the line for purposes of seeing **DR. OSCAR LIGHTNER** or a another purported medical professional under **DR. OSCAR LIGHTNER's** purported supervision.

23. **ANDRES MARTINEZ, JR.** and other coconspirators known and unknown to the grand jury, would also accept cash directly from purported patients, in exchange for prescriptions from **DR. OSCAR LIGHTNER** for hydrocodone, carisoprodol, and other drugs outside the course of professional practice and not for a legitimate medical purpose.

24. **DR. OSCAR LIGHTNER** would knowingly prescribe hydrocodone, carisoprodol, and other drugs, without consulting the patient's primary care physician or other doctors treating the patient, without conducting an adequate examination and evaluation of the patient, without exhausting evidence-based treatments, without reviewing the appropriate medical records, and without taking other actions required by a doctor's minimum standard of care in the area of pain management.

25. From in or around March of 2016, through in or around August 2018, **DR. OSCAR LIGHTNER**, and **ANDRES MARTINEZ, JR.**, and their coconspirators known and unknown to the grand jury, would receive approximately $3 million dollars in cash as a result of **DR. OSCAR LIGHTNER's** illegitimate prescriptions for hydrocodone and carisoprodol.

All in violation of Title 21, United States Code, Section 846.

## COUNTS TWO - FOUR
**Unlawfully Distributing and Dispensing Controlled Substances and Aiding and Abetting
(21 U.S.C. § 841 & 18 U.S.C. § 2)**

26. Paragraphs 1 through 11 and 16 through 25 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

27. On or about the dates specified below, in the Houston Division of the Southern District of Texas, Defendants,

**DR. OSCAR LIGHTNER and ANDRES MARTINEZ, JR,**

for the counts outlined below, aiding and abetting and aided and abetted by others known and unknown to the Grand Jury, did unlawfully distribute and dispense, not for a legitimate medical purpose and outside the scope of professional practice, the controlled substances alleged below:

| Count | Defendant | On or about date | Controlled Substances | "Patient" |
|---|---|---|---|---|
| 2 | LIGHTNER | October 12, 2017 | Hydrocodone | A |
| 3 | LIGHTNER and MARTINEZ | May 29, 2018 | Hydrocodone | B |
| 4 | LIGHTNER and MARTINEZ | June 4, 2018 | Hydrocodone | C |

All in violation of Title 21, United States Code, Section 841(a), (b)(1)(C), (b)(2) & Title 18, United States Code, Section 2.

## NOTICE OF CRIMINAL FORFEITURE
**(21 U.S.C. § 853)**

28. The allegations contained in Count 1 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 21, United States Code, Section 853.

29. Pursuant to Title 21, United States Code, Section 853, the United States gives notice to the defendants **DR. OSCAR LIGHTNER**, and **ANDRES MARTINEZ, JR.** that upon conviction of an offense in violation of Title 21, United States Code, Section 846, the following property shall be subject to forfeiture:

   a. All property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such offense; and

   b. All property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, the offense.

30. The defendants **DR. OSCAR LIGHTNER**, and **ANDRES MARTINEZ, JR.**, are notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture, which is at least $3 million in United States currency.

31. In the event that one or more conditions listed in Title 21, United States Code, Section 853(p) exists, the United States will seek to forfeit any other property of the defendants up to the total value of the property subject to forfeiture.

RYAN K. PATRICK
UNITED STATES ATTORNEY

JASON KNUTSON
Trial Attorney
Fraud Section, Criminal Division
Department of Justice
jason.knutson@usdoj.gov
(202) 679-1883

A TRUE BILL

Original Signature on File
FOREPERSON

9